1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

9
10
11

| | |
|---|---|
| JEFFREY DIBBERN,<br><br>                    Plaintiff,<br><br>          v.<br><br>CITY OF BAKERSFIELD, *et al.*,<br><br>                    Defendants. | Case No.  1:22-cv-00723-CDB<br><br>**ORDER ON MOTIONS IN LIMINE**<br><br>(Docs. 68-70) |

12
13
14
15
16
17
18

## Introduction

Plaintiff Jeffrey Dibbern ("Plaintiff") asserts claims pursuant to 42 U.S.C. § 1983 and state law against Defendants City of Bakersfield, Anthony Kidwell, Nghia Duong, and Fabian Salazar (collectively "Defendants"), based on Defendants' alleged actions in connection with a law enforcement encounter between Plaintiff and Defendants and others on December 30, 2021, in Bakersfield, as alleged in the operative First Amended Complaint (FAC).  (Doc. 50).  In the FAC, Plaintiff asserts causes of action for: (1) 42 U.S.C § 1983 - Violation of the Fourth Amendment - Excessive Force; (2) 42 U.S.C § 1983 - Violation of the Fourteenth Amendment - Denial of Medical Care; (3) 42 U.S.C § 1983 - Conspiracy to Violate Civil Rights; (4) Violation of California Civil Code § 52.1; (5) Battery/Assault; (6) Intentional Infliction of Emotional Distress; and (7) Negligence.

1

Trial of the action is scheduled to commence on September 16, 2024.  Pending before the Court are the parties' motions in limine, filed August 12, 2024.  (Docs. 68-70).  The parties filed oppositions on August 22, 2024. (Docs. 80, 81).

**Discussion**

### A. **Legal Standard**

Parties may file motions in limine before or during trial "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).  Rulings in limine are not binding on the court, and the court may amend, renew, or reconsider such rulings in response to developments at trial. *Id*. at 41–42.

To decide motions in limine, the Court considers whether evidence "has any tendency to make a fact more or less probable than it would be without the evidence," and whether "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Relevant evidence is generally admissible.  Fed. R. Evid. 402.  However, the Court may exclude relevant evidence for various reasons, including if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  In other words, relevant evidence may be excluded when there is a significant danger that the jury might base its decision on emotion or when non-party events would distract reasonable jurors from the real issues in a case. *See Tennison v. Circus Circus Enters., Inc*., 244 F.3d 684, 690 (9th Cir. 2001); *United States v. Layton*, 767 F.2d 549, 556 (9th Cir. 1985).

The rulings on the motions in limine made below do not preclude either party from raising the admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrates a change of circumstances that would make the evidence admissible. *See City of Pomona v. SQM N. Am. Corp*., 866 F.3d 1060, 1070 (9th Cir. 2017) (noting that the court's motion in limine ruling is a preliminary opinion).  In this event, the proponent of the evidence SHALL raise the issue outside the presence of the jury.

///

///

### B.  Uncontested Motions in Limine

Defendants do not oppose Plaintiff's motion in limine No. 1 to exclude any reference, evidence, testimony, or argument that a gun was recovered from the vehicle and/or that Plaintiff was armed.  (Doc. 80 at 4).  Accordingly, Plaintiff's motion in limine No.1 will be granted subject to the Court's admonition above that a party may seek reconsideration of a ruling made herein outside the presence of the jury.

Plaintiff does not oppose Defendants' motion in limine No. 3 (evidence of officer discipline/use of force complaints), No. 5 (testimony of Dr. Scott Davis), and No. 8 (evidence pertaining to Plaintiff's son and girlfriend).  Accordingly, Defendants' motions in limine No. 3, No. 5, and No. 8 will be granted subject to the Court's admonition above that a party may seek reconsideration of a ruling made herein outside the presence of the jury.

### C.  Plaintiffs' Contested Motions in Limine

#### No. 2: Stolen Vehicle

Plaintiff seeks to exclude any reference, evidence, testimony or argument that the vehicle Plaintiff drove was stolen.  Plaintiff asserts the stolen status of the vehicle he was driving is irrelevant to the question of whether the Defendants' use of force was reasonable (both as to his Section 1983 and related state law claims) because a jury must judge reasonableness based on what was known to the officers at the time force was employed.  (Doc. 69 at 12-13).  Plaintiff additionally argues the stolen status of the vehicle is irrelevant to the question of damages and also should be excluded under Rule 403.  *Id.* at 14-15.  Moreover, Plaintiff argues the stolen status of the vehicle should be excluded as "improper character evidence."  *Id.* at 17.

Defendants argue the fact that Plaintiff admittedly stole the vehicle he was driving is relevant to a jury's consideration of contributory negligence and, hence, relevant to Plaintiff's negligence cause of action.  (Doc. 80 at 5) (citing *Willis v. City of Fresno*, No. 1:09–CV–01766–BAM, 2014 WL 1419239 (E.D. Cal. Apr. 14, 2014)).  Defendants separately assert Plaintiff's operation of a stolen vehicle reveals his "mindset" in seeking to avoid capture.  Defendants further argue that any prejudice implicated in admitting the fact can be ameliorated with a limiting instruction.

3

In *Willis*, although officers were unaware at the time of their pursuit that a suspect was intoxicated, the court permitted the defendants to introduce evidence of the intoxication as being relevant to their defense of comparative negligence.  2014 WL 1419239, at *22.

Although Defendants analogize to *Willis* in arguing that the fact Plaintiff was driving a stolen vehicle "is no different than that of the Plaintiff's intoxication," the argument is made in conclusory fashion and the Court perceives an important distinction.  Whereas intoxication impairs a person's cognitive and physical abilities and, thus, could inform a factfinder's consideration of the person's *conduct* relevant to comparative fault, the stolen status of a vehicle does not similarly bear on a person's ability to "use ordinary or reasonable care."  *Id.* at *13.

As for Defendants' separate argument that the stolen status of the vehicle "goes to the Plaintiff's mindset," they do not elaborate what fact of consequence is made more probable by introduction of this evidence (*see* Fed. R. Evid. 401) other than to assert it would explain why Plaintiff was fleeing from Defendants and purportedly willing "to do whatever it took to avoid capture."  While the Court acknowledges this evidence may be useful to put the police pursuit in context, the reason why Plaintiff was fleeing does not directly bear on the question of the Defendants' reasonable use of force (in contrast to the relevance of the fact of flight) – particularly given Defendants do not argue they were aware Plaintiff was driving a stolen vehicle at the time of their pursuit.  In short, the Court finds that any probative value of this evidence is substantially outweighed by the risk of unfair prejudice that would result from introducing the evidence.  *See* Fed. R. Evid. 403.

**No. 3: Methamphetamine Intoxication**

Plaintiff seeks to exclude any reference, evidence, testimony, or argument that Plaintiff was under the influence of methamphetamines during the incident.  According to Plaintiff, officers were not aware at the time he was subjected to force that he had consumed methamphetamine "hours before the incident" and that he was "moderately high" at the time of the incident.  (Doc. 69 at 18).  Plaintiff relatedly seeks to exclude a toxicology report as inadmissible hearsay.  *Id.* at 24 (citing *V.V. v. City of Los Angeles*, No. 2:21-CV-01889-MCS-PD, 2022 WL 3598167, at *5 (C.D. Cal. July 6, 2022)).

Defendants raise several arguments in opposition to Plaintiff's motion.  First, Defendants argue the fact that Plaintiff admittedly was under the influence of methamphetamine during the encounter is

relevant to a jury's consideration of contributory negligence and, hence, relevant to Plaintiff's negligence cause of action.  (Doc. 80 at 6) (citing *Willis*, 2014 WL 1419239).  Second, Defendants argue that, because facts relating to Plaintiff's conduct during the incident are in dispute, the evidence of intoxication is admissible to bolster or undermine competing interpretations of the evidence, notwithstanding Defendants were unaware of Plaintiff's intoxication at the time of the encounter.  *Id.* at 6-8 (citing *Graham v. Connor*, 490 U.S. 386, 399 n.12 (1989) and *Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 944 (9th Cir. 2009).  Third, Defendants argue the fact of Plaintiff's intoxication is relevant to his credibility in remembering the events at issue.  *Id.* at 8.  Fourth, Defendants argue the toxicology report is admissible pursuant to the records exception to the hearsay rule.  *Id.* at 9 (citing Fed. R. Evid. 803(4) and (6)(B)).  Defendants further argue that any prejudice implicated in admitting the fact of intoxication can be ameliorated with a limiting instruction.

Plaintiff's claims that law enforcement officers used excessive force in the course of a "seizure" of a person are analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham*, 490 U.S. at 395.[1]  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.* at 396.  "Conducting this fact-based inquiry encompasses a consideration of the facts known to the police officers at the time."  *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1025 (9th Cir. 2015) (citing *Graham*, 490 U.S. at 396).  *See, e.g., Blankenhorn v. City of Orange*, 485 F.3d 463, 478 (9th Cir. 2007) (weighing officer's knowledge prior to encounter with plaintiff of plaintiff's gang association and criminal history).

The Ninth Circuit has held that a plaintiff's intoxication is not relevant to the reasonableness inquiry where an officer is unaware of such facts.  *Dunivin v. Cnty. of Riverside*, No. EDCV 21-0040 JGB (DTBx), 2024 WL 3468785, at *8 (C.D. Cal. June 14, 2024) (citing *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1232-33 (9th Cir. 2013)).  "However, where evidence that the plaintiff was under the

---

[1] "It is clear that under *Graham*, excessive force claims arising before or during arrest are to be analyzed <u>exclusively</u> under the fourth amendment's reasonableness standard rather than the substantive due process standard...." *Ward v. City of San Jose*, 967 F.2d 280, 284 (9th Cir. 1991) (quoting *Reed v. Hoy*, 909 F.2d 324, 329 (9th Cir.1989) (emphasis added), overruled on other grounds as stated in *Edgerly v. City and Cnty. Of San Francisco*, 599 F.3d 946, 956 n.14 (9th Cir. 2010)).

influence is probative of his behavior at the time, it may be admissible to corroborate the officer's account of what happened." *Id.* (citing *Boyd*, 576 F.3d at 944) (holding that evidence that decedent was "on drugs" at the time of the incident was probative of the police officers' claim that the decedent was "acting erratically, taunting police and goading them to shoot him instead of following police commands"). Accord *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010) (on summary judgment, relying on hospital medical report showing that plaintiff was under the influence of crack cocaine in considering whether officers used a reasonable amount of force while arresting a resisting plaintiff)).

Some courts appear to limit the introduction of after-acquired evidence of a plaintiff's drug intoxication to situations where officers had some suspicion that a suspect was intoxicated at the time of their encounter with him. *E.g.*, *Dunivin*, 2024 WL 3468785, at *8 (excluding evidence of plaintiff's drug intoxication where officers only observed he was "somewhat agitated and threatening" but did not document any suspicion that plaintiff was intoxicated at the time force was used) (citing *Shirar v. Guerrero*, No. EDCV 13-906 JGB (DTBx), 2017 WL 6001270, at *3 (C.D. Cal. Aug. 2, 2017)). However, that limitation is not consistent with the holding of *Boyd*, where the Court of Appeals upheld introduction of the plaintiff's intoxication as tending to support officers' testimony only that the plaintiff appeared erratic, not that he appeared intoxicated.

Here, as in *Boyd*, the parties' proffer of facts reveals disputed characterizations of the incident that may be bolstered or undermined by evidence that Plaintiff was on drugs at the time. *Boyd*, 576 F.3d at 944. *See, e.g.*, *Diaz v. Cnty. of Ventura*, No. CV 19-4695-DMG (AGRx), 2021 WL 6752003, at *4 (C.D. Cal. Nov. 22, 2021) (declining to exclude evidence of decedent's intoxication that was unknown to the officer at the time of the use of force because decedent's "erratic behavior during the standoff and at the time of the shooting will be squarely at issue at trial"). Accordingly, evidence of Plaintiff's drug intoxication is relevant and may be admitted. *Cf. Nash-Perry v. City of Bakersfield*, No. 1:18-cv-1512 JLT BAK (SAB), 2022 WL 3357516, at *3-5 (E.D. Cal. Aug. 15, 2022) (reserving ruling on whether to exclude evidence of drug intoxication until after plaintiff "open[s] the door by presenting evidence" of his disputed version of events).

Defendants also are correct that evidence of drug intoxication separately is admissible for the limited purpose of challenging Plaintiff's ability to accurately recollect the events at issue.  *See Brooks v. Haggett*, No. C 07–2615 MEJ, 2010 WL 4226693, at *13 (N.D. Cal. Oct. 21, 2010).

As for the toxicology report, the Court will reserve ruling on its admissibility until trial.  To the extent Defendants seek to introduce the report, they will be required to lay the proper foundation and satisfy an appropriate exception to hearsay rules.  Further, because it appears undisputed that Plaintiff admits to methamphetamine use shortly before the incident, the report may be excluded under Rule 403 as the introduction of such cumulative expert evidence risks undue prejudice.  *Cf. Watson v. City of San Jose*, 765 Fed. Appx. 248, 252 (9th Cir. 2019) (observing heightened risk of prejudice where drug use evidence was presented by an expert in trial where liability was not bifurcated from damages) (citing *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 602-03, 606 (9th Cir. 2016)).

The Court will deny Plaintiff's motion subject to Plaintiff raising at trial objections pursuant to Fed. R. Civ. P. 403.

### No. 4: Plaintiff's Apology Note

Plaintiff seeks to exclude any reference, evidence, testimony, or argument relating to an apology note he wrote or attempted to write to the involved officers while Plaintiff was at the hospital.  Plaintiff argues the note is irrelevant, constitutes hearsay, and otherwise should be excluded under Rule 403.  (Doc. 69 at 24-30).

Defendants argue evidence of the note is relevant for the purposes of demonstrating Plaintiff's purported consciousness of wrongdoing and that the evidence is excepted from the prohibitions against hearsay as the statement of a party-opponent.  (Doc. 80 at 1).

Taking the hearsay argument first, it does not appear Defendants have custody of a physical note; rather, it appears Plaintiff partially wrote a note, and orated the substance of the note to officers at the hospital, but upon learning of his imminent discharge from the hospital, crumpled-up the note and discarded it.  (Docs. 69-2 and 70, "Quesada Decl." Exs. I-J; Doc. 80 at 11 & n.6).  It also appears some of Plaintiff's statements about and the actual text of the note he recounted to officers are captured on the officers' body-worn cameras.  *Id.* Ex. I.

7

While the Court preliminarily agrees with Plaintiff that the officers' reports memorializing their interactions with Plaintiff about the apology note are hearsay, Plaintiff's statements to the officers about the note are not hearsay under Fed. R. Evid. 801(d)(2)(A) to the extent Defendants seek to introduce those statements against Plaintiff.

The Court agrees with Defendants that Plaintiff's expression of remorse or desire to apologize or otherwise make amends tends to show some consciousness of wrongdoing and, thus, is relevant. *See Murphy v. Precise*, No. 1:16-CV-0143-SLB-DAB, 2017 WL 6002581, at *16 (M.D. Ala. Dec. 1, 2017) (in wrongful death action against doctor, permitting introduction of evidence that defendant altered plaintiff's medical records as "relevant to showing consciousness of wrongdoing"); *Oliver v. City and Cnty. of San Francisco*, No. C 07-2460 JL, 2009 WL 10736500, at *2 (N.D. Cal. Apr. 3, 2009) (permitting introduction of defendant-officer's apology to plaintiff as "probative of his sense of responsibility for that evening's events."). The factors Plaintiff argues mitigate the relevance of the note – including that Plaintiff partially wrote the note some 33 days after the use of force incident, that he had undergone surgeries prior to writing the note and was at some point medicated (Doc. 69 at 27-28) – do not compel the Court to find that the probative value of this evidence is substantially outweighed by unfair prejudice under Rule 403; rather, those are facts and circumstances Plaintiff can seek to introduce to blunt the effect of the evidence's introduction. *See Oliver*, 2009 WL 10736500, at *2 ("At trial, [the defendant] is entitled to explain the admission and even to retract it, but the factual evaluation of the admission in light of his explanation, retraction, or repudiation is for the trier of fact.") (citing *Am. Home Assur. Co. v. Am. President Lines, Ltd.*, 44 F.3d 774, (9th Cir. 1994)).

### No. 5: Plaintiff's Statements at Hospital

Plaintiff seeks to exclude any reference, evidence, testimony or argument relating to statements Plaintiff made while at the hospital. Plaintiff argues these statements are irrelevant and otherwise should be excluded under Rule 403. Plaintiff has not identified the specific statements he argues are objectionable; rather, he includes with his motion 22 excerpts of body-worn camera video and seemingly seeks to exclude *every* statement on the grounds that such statements made after the incident naturally were not known to the Defendants at the time of their use of force against Plaintiff. (Doc. 69 at 31) (Quesada Decl. ¶¶ 13-34, Exhibits L - GG).

Defendants argue Plaintiff's statements are relevant and not hearsay and suggest they intend to seek to introduce only two of the videos, although they reserve their right to seek to introduce others. (Doc. 80 at 12-13).

As set forth above in connection with addressing the first three of Plaintiff's motions in limine, the mere fact that evidence sought to be introduced was not within the knowledge of the Defendants at the time of the use of force incident is not dispositive of the question of the evidence's admissibility (*see supra*). Thus, while such evidence may not be relevant to the key question of the reasonableness of the officers' use of force, it could be relevant (and admissible) for other reasons.

The video excerpts amount to more than six hours of recordings, including a five-gigabyte excerpt that is approximately three hours in length and for which it appears the body-worn camera was on mute the entire time. The recorded statements include expressions of Plaintiff's then-existing state of mind ("I was scared … I was confused"), his physical and medical condition and diagnoses (including his reports of experiencing pain), and complaints about medication, among other things. There are some statements that do not appear to be relevant for any purpose or otherwise could be objectionable under Rule 403 – including a 17-minute excerpt of a series of expletive-laden outbursts by Plaintiff and demands that he be moved out of the hospital and "into custody." Quesada Decl. Ex. U.

Although the Court has reviewed the 22 video excerpts containing the statements that Plaintiff seeks to exclude, the Court declines to catalog those statements and manufacture arguments for Plaintiff why each statement over a six+-hour timeframe may be inadmissible. The motion will be denied.

### No. 6: Testimony of Jennifer Marchant

Plaintiff seeks to exclude Jennifer Marchant from offering any testimony, evidence, or argument at trial on the grounds that such testimony is irrelevant, based on lack of personal knowledge, and otherwise objectionable under Rule 403. The Court has no further information from Plaintiff's motion as to who Ms. Marchant is or even the general anticipated testimony she may offer. (Doc. 69 at 33-34). According to Defendants' opposition, Ms. Marchant is Plaintiff's live-in fiancée and the mother of Plaintiff's child. (Doc. 80 at 13). Defendants proffer that, during deposition,

Plaintiff testified Ms. Marchant cared for him during his recovery and reportedly is a percipient witness to his expressions of experiencing pain and limitations of daily life activities. *Id.* at 14.

Plaintiff has not developed any arguments for excluding Ms. Marchant from testifying aside from generally invoking lack of relevance and foundation. Although he invokes Rule 403, he likewise has failed to present anything more than general argument addressing the balance of probative value and unfair prejudice. The motion will be denied.

### No. 7: Social Media Posts of Jennifer Marchant

Plaintiff seeks to exclude any reference, evidence, testimony or argument relating to Ms. Marchant's social media posts as irrelevant and unduly prejudicial under Rule 403. (Doc. 69 at 34-35). Plaintiff describes two videos uploaded to Ms. Marchant's social media account that depict him jumping off of a balcony and a boat. In opposition, Defendants argue that the videos are relevant to the issue of Plaintiff's credibility and the extent of his injuries. (Doc. 80 at 16).

The Court has reviewed the proffered videos (Quesada Decl. Exs. HH and II). and deems them relevant to the issue of damages and potentially (to the extent contrary evidence concerning extent of injuries is admitted) to Plaintiff's credibility and not excludable under Rule 403. E.*g., Nielsen v. Cal. Capital. Ins. Co*., No., No. 2:22-CV-0177-TOR 2023 WL 11091242, at *11 (W.D Wash. Sept. 29, 2023) ("While these [social media] reports may be irrelevant to the question of whether Defendants' investigation was reasonable at the time of the final offer, it will assist the jury in evaluating the objective value of Plaintiff's damages").

### No. 8: Dismissal of Claims of Former Defendants; Courtroom Exclusion

Plaintiff seeks to exclude any reference, evidence, testimony or argument relating to dismissal of claims against Jaime Velazquez, Jeffrey King, and Garett Sanford as irrelevant and objectionable under Rule 403. (Doc. 69 at 35-36). He separately moves to exclude these witnesses from the courtroom until they are called to testify and preclude these witnesses from accessing trial testimony in advance of their testifying. *Id.* at 36 (citing Fed. R. Civ. P. 615(a) & (b)). Defendants do not oppose Plaintiff's motion so long as the Court applies Rule 615 equally to all witnesses.

Given Defendants' lack of opposition, the Court will grant Plaintiff's motion. The named officers – as well as all nonexpert and nonparty witnesses identified in the pretrial order – shall be

excluded from the courtroom until such time as the witness is called to testify, subject to any party's raising outside of the presence of the jury an argument under Rule 615(a) for relief and shall be barred from accessing trial testimony.  Neither side may introduce the fact that any of these officers was a named Defendant in this action.

### No. 9: Plaintiff's Drug Use History

Plaintiff seeks to exclude any reference, evidence, testimony, or argument relating to Plaintiff's drug use/drug history as irrelevant to the issues of liability and damages, as improper character evidence, and as unfairly prejudicial under Rule 403.  (Doc. 69 at 37).  Defendants argue such evidence is relevant to Plaintiff's claimed damages, and specifically, to his life expectancy, habits, activities and lifestyle.  (Doc. 80 at 17).

Evidence of Plaintiff's past drug use is relevant to both liability and damages.  Plaintiff asserts a claim for intentional infliction of emotional distress for which he will be required to prove that he suffered severe or extreme emotional distress proximately caused by the Defendants' outrageous conduct.  *Berkley v. Dowds*, 152 Cal.App.4th 518, 533 (2007).  He also seeks to recover damages on his Section 1983 and other state law claims for suffering emotional distress.  *See* (Doc. 1 ¶¶ 28, 32, 41, 52, 62, 79, 98, 101).  Plaintiff's use of methamphetamine for approximately one and a half years leading up to the use of force incident is probative of whether and the extent to which he experienced emotional distress and may be entitled to damages for suffering from emotional distress.  The probative value of this evidence is not per se substantially outweighed by the prejudice that may result from the evidence's introduction.  *See Romero v. Los Angeles Cnty.*, No. 2:21-cv-03972-SPG (PVCx), 2024 WL 3467741, at *2 (C.D. Cal. June 27, 2024) ("Because Plaintiff Romero claims emotional distress damages, her prior use of illegal drugs is relevant as an alternative explanation of her claimed mental health state"; finding Rule 403 did not preclude introduction of drug use evidence) (citing cases).

Therefore, the Court will deny Plaintiff's insofar as it makes a blanket request that all drug use evidence be excluded.  If during trial Defendants seek to introduce particular instances of Plaintiff's drug use and Plaintiff object, the Court will issue a ruling at that time.

*///*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**No. 10: Defendant's criminal history**

Plaintiff seeks to exclude any reference, evidence, testimony or argument relating to Plaintiff's criminal history.  Plaintiff asserts the information is irrelevant, would constitute impermissible character evidence, and otherwise is unduly prejudicial under Fed. R. Evid. 402, 403 and 404. Plaintiff refers generally to "criminal history" as including convictions, charges, arrests, and prior interactions with law enforcement, including his no contest pleas to charges resulting from the incident at issue here.[2]  (Doc. 69 at 41-45).

Defendants argue that the fact that Plaintiff admittedly was the subject of an outstanding arrest warrant at the time of the incident is relevant to his contributory negligence as Plaintiff reportedly told Defendants he fled because of the warrant.  (Doc. 80 at 18).  Separately, Defendants argue that Plaintiff's pleas and convictions on criminal charges resulting from the incident (felony reckless evasion and misdemeanor obstruction) likewise are relevant to contributory negligence.  Finally, Defendants argue Plaintiff's conviction for an unrelated charge of possessing a stolen vehicle is admissible for impeachment purposes pursuant to Fed. R. Evid. 609.  *Id.* (citing *United States v. Hursh*, 217 F.3d 761, 768 (9th Cir. 2000)).

**a. Governing Law**

Pursuant to Fed. R. Evid. 609(a)(1)(A), evidence that a witness has been convicted of a crime that was punishable by imprisonment in excess of one year shall be admitted for the purpose of attacking a witness's character for truthfulness, subject to Rule 403.  Separately, convictions involving elements or admitted acts of dishonesty or false statements may also be used to attack a witness's credibility without regard to the crime's penalty.  Fed. R. Evid. 609(a)(2).  Under Rule 609(b), prior convictions older than ten years are admissible for impeachment purposes if their probative value substantially outweighs any prejudicial effect and reasonable written notice of intent to use is given. Fed. R. Evid. 609(b).

---

[2] Plaintiff suggests he may have some form of "criminal history" relating to a driving under the influence (DUI) incident (Doc. 69 at 41).  Defendants did not respond to this portion of Plaintiff's motion or otherwise indicate they seek to introduce at trial criminal history relating to a DUI. Accordingly, this portion of Plaintiff's motion will be granted.

"The Ninth Circuit has outlined five factors for courts to consider when balancing the probative value of evidence against the prejudicial effect under Rule 609: '(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of [the party's] testimony; and (5) the centrality of [the party's] credibility.'"   *Stevenson v. Holland*, 504 F. Supp.3d 1107, 1133 (E.D. Cal. 2020) (quoting *United States v. Hursh*, 217 F.3d 761, 768 (9th Cir. 2000)).   "With regard to the ten-year limit under Rule 609(b), the Ninth Circuit has cited favorably to the committee notes from the adoption of the rule, which state in part that '[i]t is intended that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances.'"   *Id.* (quoting *Simpson v. Thomas*, 528 F.3d 685, 690 (9th Cir. 2008)) (quoting Fed. R. Evid. 609 advisory committee notes).

### b. Discussion – Outstanding warrant

Defendants suggest they seek to introduce evidence that Plaintiff was on probation at the time of the incident and argue his admission to officers that he fled because of an outstanding warrant is relevant to Plaintiff's contributory negligence.  (Doc. 80 at 18).  Rule 609 does not bear on the admissibility of this evidence.

While the Court acknowledges the existence of an outstanding warrant may be useful to put the police pursuit in context, the reason why Plaintiff was fleeing does not directly bear on the question of the Defendants' reasonable use of force (in contrast to the relevance of the fact of flight) – particularly given Defendants do not argue they were aware Plaintiff was on probation or the subject of an outstanding warrant at the time of their pursuit.  While Plaintiff's probation status has some marginal probative value, the Court finds it is substantially outweighed by the risk of unfair prejudice that would result from introducing the evidence.  *See* Fed. R. Evid. 403.

### c. Discussion – Related reckless evading/resisting arrest conviction

As a result of the incident at issue in this case, Plaintiff entered a no contest plea to felony reckless evading and resisting arrest for fleeing in his vehicle.  (Doc. 69 at 41); *see* (Doc. 80 "Marderosian Decl." ¶ 15 & Doc. 80-2 at Ex. 15).

"A court judgment is hearsay 'to the extent that it is offered to prove the truth of the matters asserted in the judgment.'"  *United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007) (quoting *United*

*States v. Boulware*, 384 F.3d 794, 806 (9th Cir.2004), cert. denied 546 U.S. 814 (2005)).  Here, Defendants argue that Plaintiff's felony conviction arising from the incident at issue is relevant to demonstrating Plaintiff's contributory negligence (Doc. 80 at 18) – in other words, Defendants seek to introduce the conviction for the truth of the matter asserted.  Two hearsay exceptions in the Federal Rules of Evidence explicitly allow for the admission of judgments, only one of which could be applicable here.  *Id.* at 1036-37.  Pursuant to Rule 803(22), a final judgment of conviction is excepted from the hearsay rule but only where, among other things, the judgment "was entered after a trial or guilty plea, *but not a nolo contendere plea*."  Fed. R. Evid. 803(22)(A) (emphasis added).  Here, Plaintiff's conviction was pursuant to a nolo contendere plea, and, thus, is not excepted from hearsay under Rule 803(22).  Accordingly, the fact of the conviction may not be introduced for the truth of the matter asserted.  *See United States v. Nguyen*, 465 F.3d 1128, 1131-32 (9ths Cir. 2006) ("The admission into evidence of Nguyen's misdemeanor nolo contendere convictions … was inconsistent with Rule 803(22).").

Although Defendants do not argue the conviction is admissible for the separate purpose of impeachment pursuant to Rule 609, the penalty for this conviction is a term of incarceration of 16 months or more, and, accordingly, the conviction "shall be" admissible for impeachment purposes unless its probative value is substantially outweighed by the potential for prejudice.  *See Brewer v. City of Napa*, 210 F.3d 1093, 1096 (9th Cir. 2000) (observing that a felony conviction otherwise admissible for impeachment under Rule 609 is not made inadmissible merely because it was obtained by a nolo contendere plea).  The Court has balanced the factors noted above as articulated by the Court of Appeals in *United States v. Hursh*.  The Court concludes that the minimal impeachment value of the conviction is substantially outweighed by the likelihood its introduction would not only cause unfair prejudice, but also, confuse the jury into perceiving that officers could not have engaged in excessive force given Plaintiff's conviction for reckless evasion in connection with the same use of force incident.  However, the Court will reconsider its grant of Plaintiff's motion if Plaintiff opens the door by testifying to anything inconsistent with the conviction (to wit, if he testifies that he was *not* reckless in evading and resisting arrest).

*///*

14

### d. Discussion – Related misdemeanor obstruction conviction

Like his felony reckless evasion conviction, Plaintiff's misdemeanor conviction for obstruction also is inadmissible hearsay.  Further, because it is not a felony conviction, it may not be introduced for the purposes of impeachment under Rule 609.

### e. Discussion – Unrelated possession of stolen vehicle conviction

Defendants seek to introduce pursuant to Rule 609 Plaintiff's unrelated conviction for possession of a stolen vehicle (Cal. Pen. Code § 496D) for an arrest that predated the December 30, 2021, use of force incident but for which a conviction was entered sometime after the incident.  (Doc. 18 at 18).  Defendants do not argue the conviction is admissible pursuant to Rule 609(a)(2).  Thus, the Court balances the factors noted above as articulated by the Court of Appeals in *United States v. Hursh*.

While "theft crimes" do not per se "involve dishonesty or false statements within the meaning of [R]ule 609(a)(2)," a conviction for felony grand theft can be "probative of veracity."  *United States v. Mercado*, No. 18-CR-00549-LHK-3, 2020 WL 999842, at *5 (N.D. Cal. Mar. 2, 2020) (quoting *United States v. Glenn*, 677 F.2d 1269, 1273 (9th Cir. 1982) and *United States v. Alexander*, 48 F.3d 1477, 1488 (9th Cir. 1995)).  *Cf. United States v. Itum*, No. 2:23-cr-00082-VAP-1, 2024 WL 196481, at *2 (C.D. Cal. Jan. 18, 2024) ("The impeachment value of Defendant's [misdemeanor] second degree theft conviction is relatively low").

The Court has no information before it as to when Plaintiff was arrested for the offense but assumes it was relatively close in time to the December 30, 2021, use of force incident given Defendants' proffer that Plaintiff was convicted of the offense afterwards.  Although the conviction bears little similarity to the excessive force claims at issue in this case, the Court perceives some risk that prejudice would result from introducing the conviction given that Plaintiff reportedly was driving a vehicle at the time that reportedly was stolen (a fact this Court has ruled may not be introduced).  *See United States v. Bagley*, 772 F.2d 482, 488 (9th Cir. 1985) ("where, as here, the prior conviction is sufficiently similar to the crime charged, there is a substantial risk that all exculpatory evidence will be overwhelmed by a jury's fixation on the human tendency to draw a conclusion which is impermissible in law").

Although Plaintiff's testimony likely will be important to his case, the Court does not find the facts suggest his credibility will be a central issue for the jury's focus.  The Court acknowledges Defendants' contention that Plaintiff's credibility will be particularly at issue in connection with the parties' contrasting narratives concerning how Plaintiff was propelled over the wall and the type of force to which he was subjected once he was over the wall. (Doc. 80 at 7-8).  Nevertheless, the Court sees little to no indication in the record that Plaintiff intends to misrepresent his character or to testify falsely.  Indeed, the parties' pretrial filings reflect that they intend to introduce a voluminous amount of video camera footage of the incident that, for all practical purposes, will minimize the centrality of Plaintiff's credibility.  On balance, that Court concludes that the probative value of Plaintiff's unrelated conviction for possession of a stolen vehicle as to Plaintiff's character for truthfulness is substantially outweighed by the unfair prejudice that would result from admission of the conviction.

### No. 11: Testimony of Dr. Richard Clark

Plaintiff seeks to preclude (or to limit) Richard Clark MD from offering testimony, evidence, or argument at trial under FRE 702 and *Daubert*.  (Doc. 69 at 45-53) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).  Plaintiff seeks to exclude Dr. Clark from offering two opinions: (1) that Plaintiff was intoxicated at the time of the use of force incident; and (2) that Plaintiff's intoxication caused him to drive recklessly leading-up to the use of force incident.

### a. Governing Law

Under the Federal Rules of Evidence, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. Such expert testimony is permissible if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The District Court has the "'special obligation' to determine the relevance and reliability of an expert's testimony... to ensure accurate and unbiased decision-making by the trier of fact."" *Nash-Perry*, 2022 WL 3357516, at *11 (quoting *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1063 (9th Cir. 2002)).

16

**b. Discussion – Opinion re: Intoxication**

Plaintiff asserts that "Dr. Clark admitted multiple times during his deposition that he lacked the necessary information to determine Mr. Dibbern's tolerance level and that there is no way for him to determine the level of impairment, or 'intoxication,' on the day of the Incident." (Doc. 69 at 48). Dr. Clark also testified that he did not observe Plaintiff exhibiting certain tell-tale signs that are indicative of methamphetamine intoxication. *Id.* Instead, Dr. Clark relied on police reports documenting officers' observations of Plaintiff's reckless driving and other behavior to inform his opinions. Dr. Clark also did not review video surveillance of the pursuit and use of force incident, did not speak to witnesses, and did not consider relevant medical records. *Id.* at 49. Accordingly, Plaintiff argues that Dr. Clark's opinion is unreliable because it is not based on standard industry methods and it is impermissibly speculative. *Id.* Plaintiff separately argues that the opinion is irrelevant and inadmissible under Rule 403.

Plaintiff does not seriously challenge Dr. Clark's qualifications. The Court has reviewed Defendants' filings relating to Dr. Clark, including his curriculum vitae, expert report, and deposition transcript excerpts (Marderosian Decl. ¶¶ 16-18, Exs. 16-18) and concludes Dr. Clark is qualified to testify concerning methamphetamine intoxication.

Plaintiff also does not seriously challenge as improper any of the materials upon which Dr. Clark relied in forming his opinions. Those sources include relevant police reports of the incident, the toxicology report reflecting the presence of methamphetamine in Plaintiff's blood approximately nine hours after the use of force incident, the depositions of Plaintiff and involved officers, and Plaintiff's blood testing at the hospital the night of the incident. *Id.* Ex. 18 at 1.

The fact that Dr. Clark is uncertain about Plaintiff's methamphetamine tolerance or the precise amount of methamphetamine in his system at the time of the incident, and the fact that Dr. Clark did not review *all* the evidence in this case and did not personally observe Plaintiff himself, does not render his opinions "unreliable" under *Daubert*. Plaintiff cites no case law to the contrary. And because this Court comes to a different conclusion generally about the relevance and admissibility of methamphetamine evidence in this case than the court reached in *Dunivin* (*see* Doc. 69 at 51), that opinion is not persuasive. *Cf. Vos v. City of Newport Beach*, No. ACV 15-00768 JVS (DFMx), 2020

1    WL 4333656, at *5 (C.D. Cal. June 8, 2020) (rejecting arguments similar to those raised by Plaintiff

2    here regarding Dr. Clark's toxicological opinions).

### c. Discussion – Opinion re: Effects of Intoxication

4         Plaintiff also seeks to preclude Dr. Clark from testifying that any methamphetamine

5    intoxication caused Plaintiff to engage in "non-compliant" driving on the day of the incident.  (Doc. 69

6    at 51-52).  Plaintiff asserts Dr. Clark admitted during deposition that he lacked certain information to

7    inform an analysis of the extent of Plaintiff's impairment (if any) during the incident and that there are

8    alternative explanations for Plaintiff's conduct on the day of the incident.  *Id.* at 52.  Accordingly,

9    Plaintiff argues this opinion, too, is unreliable, impermissibly speculative, irrelevant, and inadmissible

10   under Rule 403.  Additionally, Plaintiff argues Dr. Clark is not qualified to render this opinion because

11   it encompasses the term "noncompliant" which, Plaintiff suggests, necessitates the witness to have

12   expertise in the field of police practices.  *Id.*

13        As with his opinion concerning Plaintiff's intoxication, Dr. Clark's opinion that the

14   methamphetamine intoxication contributed to or caused Plaintiff to drive recklessly is not unreliable

15   merely because Dr. Clark could have considered additional sources of information and did not rule out

16   alternative causes of the reckless driving. *See Vos*, 2020 WL 4333656, at *5 (mere fact that "it can be

17   difficult to say the specific effect methamphetamine in the blood could have on someone because of

18   tolerance … does not render [Dr. Clark's] opinion altogether unreliable.").  Separately, Plaintiff cites

19   no case law for the proposition that Dr. Clark is unqualified to render this opinion merely because he

20   is not a police practices expert qualified to characterize Plaintiff's driving as "noncompliant."  (Doc.

21   69 at 52-53).  *See* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that

22   the expert has been made aware of or personally observed."); *LeBlanc v. City of Los Angeles*, No. CV

23   04–8250 SVW (VBKx), 2006 WL 4752614, at *10 (C.D. Cal. Aug. 16, 2006) (permitting expert

24   witness to refer to plaintiff asserting excessive force claims as "delusional … or any other adjective

25   that a lay person would use to describe a person in [plaintiff's] state at the time of the incident,"

26   notwithstanding he was not a medical expert qualified to assess plaintiff's mental state, because

27   responding officers considered plaintiff "delusional").  Plaintiff's motion will be denied.

28   ///

18

**No. 12: Testimony of Curtis Cope**

Plaintiff seeks to exclude testimony and evidence offered by Curtis Cope that is not within the scope of his expertise as Defendants' noticed police practices expert.  Plaintiff identifies nine specific opinions offered by Cope that should be excluded but cites no case law in support of his arguments. (Doc. 69 at 54).  Defendants do not oppose an order precluding Mr. Cope from offering opinions regarding methamphetamine that Plaintiff identifies as Opinions Nos. 1, 2, 3, and 9.  *See* (Doc. 80 at 26).  Defendants oppose Plaintiff's motion with respect to the other opinions that Cope may introduce concerning Defendants' conduct during the use of force incident and its reasonableness and consistency with applicable police procedures.

"[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law."  *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (citation and quotation omitted). "This prohibition of opinion testimony on an ultimate issue of law recognizes that, when an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (alteration, quotation, and citation omitted). Whether or not Defendants violated Plaintiff's legal rights is an ultimate issue of law that is not an appropriate subject for expert testimony. *E.g., Contreras v. Gonzalez*, No. 1:18-cv-01101-AWI-SKO, 2020 WL 6887743, *3 (E.D. Cal. Nov. 24, 2020) ("[E]xperts may not opine, for example, on whether there was probable cause for an arrest) (citing cases).

The parties' respective police practices experts (including Mr. Cope) properly may testify regarding general police policies and professional standards of practice, which are facts at issue in this case, as consistency with or deviations from general police policies and professional standards of practice are relevant factors in determining the ultimate issues in this case.  *E.g., Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (expert declaration regarding officers' violation of "applicable police standards" relevant to the reasonableness of a particular application of force); *Stevenson*, 504 F. Supp.3d at 1119 (permitting use of force expert to offer "opinions on whether certain actions were in accordance with relevant training and best practices"); *Cotton v. City of Eureka, Cal.*, No. C 08–04386 SBA, 2010 WL 5154945, at *19 (N.D. Cal. Dec. 14, 2010) (plaintiffs'

expert on police procedures permitted to offer opinion as to whether officers' use of force was consistent with agency policy and legal requirements).  Moreover, to the extent such opinions are sufficiently expressed in their reports and are based on sufficient facts or data, both parties' experts also may testify about "what a hypothetical reasonable officer might have done" under defined circumstances.  *See Zeen v. County of Sonoma*, No. 17-cv-02056-LB, 2018 WL 3769867, *3 (N.D. Cal. Aug. 9, 2018).

Mr. Cope may not offer an opinion that a particular officer or Defendant did something reasonable.  However, Mr. Cope may offer a properly disclosed opinions as to (1) whether any particular action was consistent with police training, policies, standards and best practices, and (2) whether a hypothetical reasonable officer operating under defined circumstances with defined knowledge would have undertaken any particular action.  As relevant here:

"Under the circumstances you've described, a reasonable officer acting consistent with best police practices could have radioed "245(c)" …" (Cope Opinion No. 4)

"Under the circumstances you've described, a reasonable officer acting consistent with best police practices could have believed the passenger was a kidnap victim …" (Cope Opinion No. 5)

"Under the circumstances you've described, a reasonable officer acting consistent with best police practices could have believed the person may commit the crime of …" (Cope Opinion No. 6

Importantly, neither police practices expert may offer an opinion regarding whether any specific officer's use of force was excessive or objectively reasonable.  *See Morgan v. City of Los Angeles*, 2020 WL 6048831, at *3-4 (C.D. Cal. June 23, 2020) (police practices expert could not offer opinion as to whether officer's actions constituted "excessive force" or were "objectively reasonable").[3]  Plaintiff's motion will be denied.

### No. 13: Testimony of Officer Zachary Burdick

Plaintiff seeks to limit testimony and evidence offered by Officer Zachary Burdick to foundation and authentication of a Bosch Crash Data Retrieval ("CDR") report and preclude any

---

[3] As for Plaintiff's motion to exclude Opinion No. 9 concerning unrelated incidents, the Court has insufficient information before it to render a ruling (*i.e.*, a one-page excerpt of a deposition and no tangible argument or cited authority in support of exclusion). *See* (Doc. 69 at 54) (citing Quesada Decl. Ex. KK at 24).

reference, testimony, evidence or argument relating to CDR data analysis, which Plaintiff contends constitutes "expert" testimony.  (Doc. 69 at 54-56).  Plaintiff asserts Burdick was not noticed by Defendants as an expert witness and, despite Plaintiff's request, was not made available by Defendants for deposition during the period for taking expert discovery.  Plaintiff argues Burdick "may only testify to his involvement in downloading and maintaining the chain of custody of the Bosch CDR Report of Defendant Kidwell's vehicle" and not to his "EDR analysis, as contained in a police report, as that is clearly scientific, technical, and specialized knowledge that falls squarely within the scope of Rule 702."  *Id.* at 57-58.  Plaintiff specifically seeks to preclude Burdick from offering an opinion that while "the objective data in the CDR Report states that Defendant Kidwell was traveling 21 miles per hour at the time of the crash, Defendant Kidwell was traveling at approximately 14 miles per hour at the time of the crash."  *Id.* at 58.  The Court has reviewed the CDR report and Burdick's report analyzing the CDR report.  (Doc. 69-1 "Andrews Decl." ¶¶ 13-14, Exs. J and K).

Defendants argue they seek neither to introduce the CDR report nor to elicit testimony from Burdick; rather, Defendants assert Plaintiff improperly seeks to introduce the report through Burdick while barring Burdick from offering any testimony that would explain it.  (Doc. 80 at 30-31).

"Lay witnesses may testify to opinions that are rationally based on their perceptions, but they may not testify to opinions based on 'scientific, technical, or other specialized knowledge.'"  *United States v. Jimenez-Chaidez*, 96 F.4th 1257, 1267 (9th Cir. 2024) (quoting Fed. R. Evid. 701).  "A witness must testify as an expert if offering opinions that require demonstrable expertise, or go beyond the common knowledge of the average layman."  *Id.* (internal quotations and citations omitted).

In *Jimenez-Chaidez*, the Court of Appeals held that an officer properly could testify as a lay witness to the process of extracting geolocation data from a cellular telephone using an application (Cellebrite) and describing the results of the extraction, in part, because the generated reports "were understandable to a lay person" and the officer "did not opine on Cellebrite's technical methodology or reliability."  96 F.4th at 1268. The Court acknowledged that its holding did not "foreclose that there may be cases involving Cellebrite or other similar technology that do require expert testimony, particularly where the functionality or reliability of the technology is challenged or otherwise at issue."  *Id.* at 1269.

The CDR report and crash data at issue here are not akin to Google Maps and GPS data that is "readily available and understandable to the general public." *Jimenez-Chaidez*, 96 F.4th at 1267. While some information contained in the CDR report is self-explanatory – such as vehicle identification data and whether seat belts were buckled – the key and relevant data is not presented in a manner that is understandable without explanation from a person with specialized training.

What is more, the "opinion" by Burdick that Plaintiff seeks to exclude is that the officer's vehicle that struck Plaintiff was travelling at a slightly slower speed (14.34 mph) than what the face of the CDR report reportedly reflects (21 mph). This appears to place this evidentiary dispute within the exception that the *Jimenez-Chaidez* court acknowledged would require expert testimony – where "the functionality or reliability of the [underlying] technology is challenged or otherwise at issue."

Assuming Plaintiff may elicit through Burdick sufficient personal knowledge to satisfy the business records exception to the rule against hearsay (Fed. R. Evid. 803(6)), the Bosch CDR report arguably would be admissible, just as courts routinely admit Cellebrite cellular telephone extraction reports. *E.g.*, *United States v. Buyer*, No. 22 Cr. 397 (RMB), 2023 WL 6805821, at *3 (S.D.N.Y. Oct. 16, 2023); *United States v. Franks*, No. 3:21-cr-00086-TMB-MMS-1, 2023 WL 2187911, at *2, 7 (D. Alaska Feb. 23, 2023). However, without a properly noticed expert witness to explain the report's contents, the probative value of the report would be substantially outweighed by confusing the issues and misleading the jury in violation of Rule 403. Plaintiff's motion will be granted.

### No. 14: Post-Incident Surveillance Videos of Plaintiff

Plaintiff seeks to exclude any reference, evidence, testimony, or argument relating to surveillance video recordings of Plaintiff taken by defense investigators starting approximately one year after the use of force incident and continuing through as recently as approximately four weeks ago. (Doc. 69 at 61). Plaintiff argues the most recently produced videos violate Rule 26's disclosure obligations and should be excluded as a sanction pursuant to Rule 37, that the videos otherwise are irrelevant to liability and damages, and also should be excluded under Rule 403. The Court has reviewed portions of the three surveillance videos taken within the past four weeks (Quesada Decl. ¶¶ 39-41, Exs. LL – NN), as well as the nine videos taken in early-2023 (*id.* ¶¶ 42-54, Exhibits OO – AAA). The videos depict Plaintiff engaged in common life activities, such as walking into and out of

22

stores, pushing a shopping cart, driving, crouching under a vehicle, emptying the trash, loading/unloading items into the bed of a pickup trunk, holding/carrying an infant child and using a stroller, all seemingly without any visible difficulty given the injury to Plaintiff's foot.

Plaintiff's argument that the recently recorded videos should be excluded because they were not disclosed consistent with Rule 26 during the period for taking nonexpert discovery is without merit. The videos were not created until after the nonexpert discovery period closed; thus, because these videos were not in the possession, custody, or control of Defendants, they were not subject to any disclosure requirement under Rule 34. Plaintiff cites no authority to support an argument that evidence that comes into a party's possession close to trial must (or even should) be excluded under Rule 37. As Plaintiff concedes, the videos were created on August 1-3 and produced by Defendants on August 5, 2024. (Doc. 69 at 61). Thus, within days of the creation of the videos, Defendants complied with any discovery supplementation obligation under Rule 26(e) by producing the videos. Plaintiff's argument about "surprise" (Doc. 69 at 61) is not well founded given his awareness in August 2023 that defense investigators were video recording his daily life activities. There is no discovery violation.

Having previewed portions of the videos, the Court concludes that their probative value is minimal – but that analysis would change were Plaintiff to testify in any manner inconsistent with what the videos portray. The Court will grant Plaintiff's motion subject to reevaluation of the Rule 403 balancing in the light of Plaintiff's testimony.

### D. Defendant's Contested Motions in Limine

#### No. 1: Graphic Photos of Plaintiff's Injuries

Defendants seek to exclude any and all evidence, references to evidence, testimony or argument relating to graphic photos taken of Plaintiff's injuries as irrelevant or for which the probative value is substantially outweighed by unfair prejudice pursuant to Rule 403. (Doc. 68 at 4-5); (Doc. 68 at 31, "Marderosian Decl." ¶ 1 and Ex. A).

In a trial involving claims of excessive force, "evidence of 'the severity of injuries' is relevant to 'evaluating the amount of force used.'" *French v. City of Los Angeles*, No. EDCV 20-00416 JGB (SPx), 2022 WL 2189649, at *12 (C.D. Cal. May 10, 2022) (quoting *Felarca v. Birgeneau*, 891 F.3d

809, 817 (9th Cir. 2018)).  Courts routinely permit the introduction of photographs depicting the extent of a plaintiff's injuries as relevant to both liability and damages.  *E.g., Aslan v. Ferrari North Am., Inc.*, No. 2:16-cv-02574-AB-SS, 2018 WL 6321635, at *5 (C.D. Cal. Oct. 19, 2018); *Wright v. Watkins and Shepard Trucking, Inc.*, No. 2:11-CV-01575-LRH-GWF, 2016 WL 10749220, at *7 (D. Nev. Jan. 19, 2016).

Because the photographs here graphically portray significant injury and to limit the prejudicial effect, the Court will entertain Rule 403 objections at trial to the extent Plaintiff seeks to introduce multiple photographs that may be unnecessarily cumulative.  Further, the Court will bar Plaintiff from using the photographs during opening statements.  *See Neff v. Desta*, No. C18-1716-RSL, 2020 WL 5899008, at *2 (W.D. Wash. Apr. 29, 2020) (barring use in opening statements and closing arguments of graphic photographs depicting plaintiff's injuries).

### No. 2:  Testimony of John Opjorden

Defendants seek to limit the testimony of a percipient witness to the use of force incident, John Opjorden, and preclude him from including improper opinions in his testimony and testifying based on speculation and conjecture.  (Doc. 68 at 5-8).  Defendants identify ten statements offered by Opjorden during his deposition that they argue constitute improper opinions.[4]

Under Fed. R. Evid. 602, a witness is permitted to testify to matters within his "personal knowledge."  Separately, under Fed. R. Evid. 701, a nonexpert witness may offer an opinion only to the extent it is (a) rationally based on the witness's perception, (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue, and (c) not expert testimony under Rule 702.  "Opinions of non-experts may be admitted where the facts could not otherwise be adequately presented or described to the jury in such a way as to enable the jury to form an opinion or reach an intelligent conclusion."  *United States v. Skeet*, 665 F.2d 983, 985 (9th Cir. 1982).  "On the other hand, testimony from a lay witness is 'unhelpful and thus inadmissible if it is mere speculation, an opinion

---

[4] In a one-sentence footnote, Defendants also suggest the anticipated testimony should be excluded under Rule 403, arguing it "is entirely irrelevant and a waste of time" given the large amount of body-worn camera footage available.  (*Id.* at 8 n.2).  There is no merit to the argument that eyewitness testimony of the use of force incident is irrelevant merely because other evidence depicting the event also exists.  To the extent Defendants intend to argue the anticipated eyewitness testimony is cumulative, the argument is undeveloped and lacks citation to case law, and accordingly, is rejected.

of law, or if it usurps the jury's function.'" *Nash-Perry*, 2022 WL 3357516, at *15 (E.D. Cal. Aug. 15, 2022) (quoting *Cal. Found for Indep. Living Ctrs. v. Cnty. of Sacramento*, 142 F. Supp.3d 1035, 1045 (E.D. Cal. 2015)).

Defendants do not seriously challenge Opjorden's competency to testify to his observations under Rule 602 given their concession that he observed Plaintiff exit his vehicle and witnessed the other officers pursue Plaintiff and ultimately strike him with a patrol vehicle.  (Doc. 68 at 5).  The Court finds the statements the Defendants identify as No. 3, No. 4, and No. 6 (*id.* at 6) generally describe Opjorden's observations and do not contain opinions.  Those statements are admissible.

The Court addresses below each of the numbered statements to which Defendants object (*see* Doc. 68 at 6):

No. 1: the statements that Defendant Kidwell jumped a center divider and appeared to be unable to control his vehicle are not opinions and are admissible as a percipient witness's observations under Rule 602.  However, characterizing Defendant Kidwell's driving as akin to "Dukes of Hazard" and offering that Opjorden feels he needs witness protection for fear of police retaliation constitute impermissible opinion testimony because the statements would not help the jury clearly understand Opjorden's percipient testimony about his observations.

No. 2: the statement that Opjorden saw a look in Defendant Kidwell's eye that "was clear that he wanted to run [Plaintiff] down" is speculative and, thus, unhelpful and inadmissible.  To the extent Plaintiff can lay a sufficient foundation, Opjorden would be able to testify that his observations of Defendant Kidwell's eyes revealed anger or similar emotion if such is his opinion.

No. 5: the statement that Defendant Kidwell "should have stopped his vehicle and chased [Plaintiff]" is speculative, impermissibly usurps the jury's function, and borders on improper expert testimony to the extent it suggests an opinion regarding reasonably available, less-intrusive use of force measures.  *See Gray v. Clark*, 654 F. Supp.3d 1062, 1071 (E.D. Cal. 2023) ("Lay witnesses may not give opinions that embrace the legal test for excessive force, including whether it was excessive, unreasonable, or greater than necessary.") (citing cases).

No. 7: while Opjorden may testify to his observations concerning damage he perceived being caused by Defendants during the encounter, the statement that Defendant Kidwell's conduct "showed

his disregard for public and private property" constitutes impermissible opinion testimony because the statement would not help the jury clearly understand Opjorden's percipient testimony about his observations.

No. 8:  the statement that BPD has a reputation for "overkill" appears to be based on secondhand accounts and not a matter within the personal knowledge of Opjorden.  Accordingly, this statement is inadmissible under Rules 602 and 701.

No. 9:  the statement that Opjorden observed Plaintiff "in pain when he was screaming" is proper percipient and lay opinion testimony under Rules 602 and 701.  *See Jones v. Warmee*, 225 F.2d 258, 260 (9th Cir.1955) (lay witnesses are competent to testify to observed pain and suffering caused by injuries); *see also Cole v. United States*, 327 F.2d 360, 361 (9th Cir. 1964) ("As to opinion, a witness need not be an expert in order to draw a conclusion that a person is distraught who has suddenly grown pale and is shaking.").

No. 10: the statement that Opjorden believes an interviewing officer at the scene "was not accurate" in what he said and told a "lie" impermissibly intrudes the jury's function in determining issues of credibility exclusively.  *E.g., McMahon v. Valenzuela*, No. 2:14-cv-02085-CAS(AGRx), 2015 WL 7573620, at *12 (C.D. Cal. Nov. 25, 2015) ("plaintiff's witnesses may not testify as to their opinions regarding the credibility of either the parties in the instant lawsuit or other witnesses who may testify").

In sum, Defendants' motion will be granted in full as to statements 2, 5, 7, 8, and 10, granted in part as to statement 1, and denied as to statements 3, 4, 6, and 9.

### No. 4: Testimony of Kelly Couch

Defendants seek to exclude any and all evidence, references to evidence, testimony or argument relating to identified opinions of Plaintiff's police practices expert, Kelly Couch.

Plaintiff agrees that the Court should exclude "testimony or opinion as to the reasonableness of the officers' actions, including testimony that the force used was excessive or unreasonable, the force violated the law, that officers did not act appropriately, that officers did not comply with Bakersfield

1   Police Department policy,[5] and opinions on witness credibility. (Doc. 81 at 11) (emphasis added).

2   However, Plaintiff asserts that Couch should be permitted to testify as to "whether Defendants' actions

3   were inconsistent with generally accepted standards in law enforcement training and police practice in

4   California," including with reference to "law enforcement training on the *Graham* factors/standards in

5   California." *Id.*

6          As set forth above in resolving Plaintiff's motion in limine No. 12 relating to Defendants'

7   expert (Mr. Cope), Couch will be permitted to offer opinions on whether certain actions were in

8   accordance with relevant training and best practices. *E.g.*, *Cotton*, 2010 WL 5154945, at *19.

9   Moreover, to the extent such opinions are sufficiently expressed in his report and are based on

10  sufficient facts or data, Couch also may testify about "what a hypothetical reasonable officer might

11  have done" under defined circumstances. *Zeen*, 2018 WL 3769867, at *3.  Relatedly, Plaintiff's

12  expert may also testify as to whether he believes a reasonable officer under hypothetically similar

13  circumstances could have used less-intrusive measures than used here. *E.g.*, *Ochoa*, 628 F. Supp.3d at

14  1016; *Morgan*, 2020 WL 6048831, at *4.  However, Couch may not offer an opinion as to whether

15  Defendants' use of force was excessive, unreasonable, unnecessary, or unjustified – those are opinions

16  on ultimate issues of law. *Id.  Nash-Perry*, 2022 WL 3357516, at *11-12 (precluding use of force

17  expert from testifying that force used was "improper and unnecessary")

18         As applied to the eight bulletized narratives to which Defendants object (Doc. 68 at 10-11),

19  Couch may not opine as to the lawfulness of the Defendants' conduct or characterize any of their use

20  of force actions as excessive, unreasonable, and inappropriate (bullets Nos. 1 and 2).  Whether an

21  officer's conduct was consistent or inconsistent with governing police policies (bullet No. 3) is a

22  proper subject of expert testimony.  No expert may opine on another witness's credibility (bullet No.

23  4). *See Andrews v. Cnty. of Orange*, No. 8:20-cv-00925-JWH-ADSx, 2021 WL 6496831, at *2 (C.D.

24  Cal. July 21, 2021) (opining "on a witness's credibility, under the moniker of 'expert' would usurp the

25  province of the jury, is of little probative value, presents a danger of misleading the jury, and must be

26  excluded").  The statements concerning less-lethal options, the obviousness of Plaintiff's pain, and the

27

28         [5] However, Plaintiff also argues in contradiction that "Mr. Couch can also opine whether the
       officers' conduct was consistent with BPD Policies."  (Doc. 81 at 11).

availability of medical care may be presented to Couch in hypothetical/reasonable officer terms (*i.e.*, "under these circumstances, would there be less-lethal alternatives that a reasonable officer acting consistent with best police practices could have employed?").  Finally, Couch may not offer an opinion about Plaintiff's mental state or intentions when his vehicle collided with Defendants' vehicle (bullet No. 8).[6]  *See Johnson v. City of San Jose*, No. 21-cv-01849-BLF, 2023 WL 8852489, at *2-3 (N.D. Cal. Dec. 21, 2023) (precluding police practices expert from opining that officer intentionally struck Plaintiff as impermissibly speculative).

In sum, Defendants' motion will be granted in part and denied in part consistent with the analysis above.

### No. 6:  Testimony About Deadliest Police Force in America

Defendants seek to exclude any and all evidence, references to evidence, testimony, or argument relating to an assertion that the Bakersfield Police Department (BPD) is the "deadliest police force in America" or that the BPD has a reputation for using excessive force.  Defendants specifically seek to exclude Opjorden from testifying or opining about a reputation for "overkill."  (Doc. 68 at 20).  Plaintiff opposes on the grounds that Opjorden's perceptions about BPD are relevant as to Opjorden's state of mind.  (Doc. 81 at 12) (citing Fed. R. Evid. 803(1)).

The Court already has ruled in resolving Defendants' motion in limine no. 2 relating to Opjorden that the statement that BPD has a reputation for "overkill" is impermissible opinion testimony as it appears to be based on secondhand accounts and not a matter within the personal knowledge of Opjorden.  To Plaintiff's "present sense impression" argument, Rule 803(1) merely is an exception to the hearsay rule, not a rule that operates to permit introduction of otherwise irrelevant testimony.  Opjorden's state of mind in perceiving the use of force incident is irrelevant to the issues of Defendants' use of force or Plaintiff's actions during the incident.  Moreover, to the extent Opjorden's state of mind could be relevant to his own actions, the Court finds that Opjorden's actions are irrelevant and, hence, his related state of mind is irrelevant, too.

---

[6] Defendants support their argument as to Couch's reported testimony concerning Plaintiff's intentions by citation to deposition transcript excerpts (*see* Doc. 68 at 11, citing Marderosian Decl."). However, no deposition transcript excerpts were provided.

Plaintiff separately asserts that his perception of the reputation of BPD as a dangerous police force is relevant to the issue of his actions. (Doc. 81 at 13).  Presenting testimony as to the general reputation of BPD untethered to a witness's personal knowledge runs afoul of Rule 602 and Rule 403. *See Nash-Perry*, 2022 WL 3357516, at *20 ("Referring to the police department that employs [a defendant] as 'the Deadliest Police Force in America' could clearly inflame the jury against the defendant."). To the extent Plaintiff may lay a proper foundation under Rule 602 as to *his own* prior interactions with BPD for the purpose of informing any fear he may testify to during the use of force incident, counsel for Plaintiff shall present that to the Court outside of the presence of the jury.

Related to this issue and in advance of receiving the parties' respective proposed voir dire, the Court offers the following direction: both parties should be permitted to explore generally the prospective jurors' awareness of and attitudes towards law enforcement's use of force as reported in the national and local media.  However, unrestrained references to high-profile cases involving excessive force (such as George Floyd) present a substantial risk of injecting confusion into the minds of jurors that this case is just like an unrelated case.  *See* Fed. Rule Evid. 403.  The Court concludes that evidence of unrelated, high-profile use of force incidents at the hands of police officers is irrelevant and unfairly prejudicial. *E.g., Jose Magana v. City of Los Angeles*, 2021 WL 809402, *2-3 (C.D. Cal. Mar. 1, 2021).  During Court-directed voir dire, the Court will explore generally juror awareness of and attitudes towards national media coverage of police force cases; while the parties may conduct reasonable follow-up, they shall not mention any specific police force case by name during attorney-led voir dire.

### No. 7: Plaintiff's Testimony Regarding Medical Diagnoses and Procedures

Defendants seek to exclude any and all evidence, references to evidence, testimony, or argument by Plaintiff or lay witnesses relating to any diagnosis or prognosis regarding Plaintiff's injuries and/or medical conditions and to preclude Plaintiff from testifying as to any alleged medical procedure he claims to have undergone.  Defendants specifically seek to preclude Plaintiff from testifying that he has been diagnosed with ADHD and about any diagnoses or procedures he has undergone as a result of the use of force incident.  (Doc. 68 at 20-21).

Plaintiff argues he should be permitted to testify to statements he made in connection with and pertinent to medical diagnoses and treatment.  (Doc. 81 at 13) (citing Fed. R. Evid. 803(4)).  Plaintiff separately seeks to testify to his pain and suffering and recovery process as a result of his injuries.  *Id.*

"Regarding medical testimony, the Ninth Circuit has stated that explaining medical diagnoses is beyond the competence of lay witnesses."  *Stevenson*, 504 F. Supp.3d at 1121 (citing *Tobeler v. Colvin*, 749 F.3d 830, 833 (9th Cir. 2014)).  Thus, a plaintiff may not testify to hearsay statements from his treating physicians regarding his diagnoses if such testimony is offered for the truth of the matter asserted; namely, that Plaintiff, in fact, has certain diagnosed conditions.  *See Henderson v Peterson*, No. C 07–2838 SBA (PR), 2011 WL 2838169, at *10 (N.D. Cal. July 15, 2011).  *See also Gilmore v. Lockard*, No. 1:12-cv-00925-SAB (PC), 2017 WL 11604670, at *1 (E.D. Cal. Feb. 17, 2017) ("Plaintiff may not personally testify regarding a diagnosis, opinions, inferences or causation, and may not offer any opinions or inferences from any medical records"); *Exmundo v. Scribner*, No. No. 1:06cv00205 AWI DLB PC, 2014 WL 4249133, at *1 (E.D. Cal. Aug. 27, 2014) ("As to Plaintiff's medical conditions, he may not testify as to any medical matter which requires scientific, technical, or other specialized knowledge, which generally includes any ultimate diagnosis [and] a cause and effect relationship").

With these principles in mind, while Plaintiff may not testify that he has been diagnosed with ADHD (or any other condition that would require introduction of a diagnosing medical provider's hearsay statement), he may testify to experiencing symptoms of that disorder (such as, in the case of ADHD, lack of focus, impulsivity, etc.).  *Stevenson*, 504 F. Supp.3d at 1121 ("But lay witnesses can testify as to perceived symptoms (i.e., what is felt, exhibited, or experienced over time) and how a condition affects one's ability to function.").

### No. 9: Belatedly Disclosed Medical Expert Opinions

Defendants seek to exclude any and all evidence, references to evidence, testimony, or argument contained in Plaintiff's belated expert witness disclosures.  Defendants appear to limit their objection to medical expert disclosures and supplemental disclosures made after the filing of the parties' joint pretrial statement (*e.g.*, after July 9, 2024).  *See* (Doc. 68 at 28) ("these disclosures are late. Any supplemental opinion was due at the time the parties filed their Pretrial Statement.").

Plaintiff does not appear to dispute that evidence and testimony contained in the since-withdrawn supplemental disclosures made after the filing of the joint pretrial statement should be excluded. (Doc. 81 at 14-15).  As it is unclear whether any dispute remains regarding the permissible scope of Plaintiff's medical experts and because the disclosures Defendants expressly object to have been withdrawn, the motion will be denied.

### No. 10: Belatedly Disclosed Videos and Photographs

Defendants seek to exclude any and all evidence, references to evidence, testimony or argument concerning belatedly disclosed Facebook videos and photographs.  According to Defendants, on August 11, 2024, Plaintiff produced several videos and photographs of himself from 2017 and 2018 which Plaintiff describes as depicting him bull riding.  (Docs. 68 at 29; Doc. 81 at 17). Plaintiff argues that exclusion is unwarranted because Defendants cannot be surprised by the disclosure given that they have been monitoring his social media accounts throughout the pretrial phase of this litigation.  (Doc. 81 at 17-18).

Whether the late disclosure is excusable because the content of the disclosures (videos and photographs) purportedly was publicly available to Defendants or whether the lateness of the disclosure is harmless and/or substantially justified so as to weigh against excluding the evidence under Rule 37 does not address the fact that the evidence was not identified in Plaintiff's trial exhibit list adopted in the Court's pretrial order.  That order provides that no unidentified exhibit may be admitted absent stipulation or on a showing that modification of the exhibit list is necessary to prevent "manifest injustice."  (Doc. at 9) (citing Fed. R. Civ. P. 16(e); Local Rule 281(b)(11)).

Here, Plaintiff has not argued that excluding the videos and photos would result in manifest injustice.  Nor does the Court perceive that manifest injustice would result from excluding the evidence.  While the Court anticipates as relevant any argument that the evidence depicts Plaintiff's lifestyle and level of activity prior to the use of force incident, Plaintiff may properly present to the jury the fact of his activities through his own or other knowledgeable witness testimony.

### Conclusion and Order

Based on the foregoing, it is therefore **ORDERED** that:

(1)    Plaintiffs' Motion *in Limine* No. 1 (Doc. 69) is **GRANTED**.

1    (2)    Plaintiffs' Motion *in Limine* No. 2 is **GRANTED**.

2    (3)    Plaintiffs' Motion *in Limine* No. 3 is **DENIED**.

3    (4)    Plaintiffs' Motion *in Limine* No. 4 is **DENIED**.

4    (5)    Plaintiffs' Motion *in Limine* No. 5 is **DENIED**.

5    (6)    Plaintiffs' Motion *in Limine* No. 6 is **DENIED**.

6    (7)    Plaintiffs' Motion *in Limine* No. 7 is **DENIED**.

7    (8)    Plaintiffs' Motion *in Limine* No. 8 is **GRANTED**.

8    (9)    Plaintiffs' Motion *in Limine* No. 9 is **DENIED**.

9    (10)   Plaintiffs' Motion *in Limine* No. 10 is **GRANTED**.

10   (11)   Plaintiffs' Motion *in Limine* No. 11 is **DENIED**.

11   (12)   Plaintiffs' Motion *in Limine* No. 12 is **GRANTED IN PART**.

12   (13)   Plaintiffs' Motion *in Limine* No. 13 is **DENIED**.

13   (14)   Plaintiffs' Motion *in Limine* No. 14 is **GRANTED**.

14   (15)   Defendants' Motion in Limine No. 1 (Doc. 68) is **DENIED**.

15   (16)   Defendants' Motion *in Limine* No. 2 is **GRANTED IN PART**.

16   (17)   Defendants' Motion *in Limine* No. 3 is **GRANTED**.

17   (18)   Defendants' Motion *in Limine* No. 4 is **GRANTED IN PART**.

18   (19)   Defendants' Motion *in Limine* No. 5 is **GRANTED**.

19   (20)   Defendants' Motion *in Limine* No. 6 is **GRANTED**.

20   (21)   Defendants' Motion *in Limine* No. 7 is **GRANTED**.

21   (22)   Defendants' Motion *in Limine* No. 8 is **GRANTED**.

22   (23)   Defendants' Motion *in Limine* No. 8 is **GRANTED**.

23   (24)   Defendants' Motion *in Limine* No. 9 is **GRANTED**.

24   (25)   Defendants' Motion *in Limine* No. 10 is **GRANTED**.

25   IT IS SO ORDERED.

26   Dated:   **August 29, 2024**

27   UNITED STATES MAGISTRATE JUDGE

28