1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY DIBBERN, | Case No.  1:22-cv-00723-CDB |
| Plaintiff, | **ORDER GRANTING IN PART DEFENDANTS' RENEWED MOTION PURSUANT TO FED. R. CIV. P. 50** |
| v. | (Doc. 135) |
| CITY OF BAKERSFIELD, *et al.*, | |
| Defendants. | **21-Day Deadline** |

**Introduction**

Trial of this action commenced on September 16, 2024.  (Doc. 115).  On September 25, 2024, the jury returned a note indicating they were "hopelessly deadlocked."   (Doc. 132).  Following a conference with the parties outside the presence of the jury, the Court conducted an inquiry with the jury and thereafter declared a mistrial.  (Doc. 124).

On October 3, 2024, Defendants filed a renewed motion for partial judgment as a matter of law pursuant to Rule 50(b), Fed. R. Civ. P.  (Doc. 135).  In their motion, Defendants argue they are entitled to judgment as a matter of law on three of Plaintiff's claims: (1) Violation of the Fourth Amendment – Failure to Provide Medical Care; (2) Negligence – Delaying or Interfering with

1

1  Plaintiff's Access to Medical Care; and (3) Conspiracy to Violate Civil Rights.  Plaintiff timely filed

2  an opposition and Defendants timely replied.  (Docs. 139, 140).

3  **Governing Legal Standard**

4        "The Federal Rules of Civil Procedure provide for judgment as a matter of law where a party,

5  'fully heard on an issue during a jury trial,' has not established a 'legally sufficient evidentiary basis'

6  for its claim, such that no 'reasonable jury' could find for that party on the issue." *Nash-Perry v. City*

7  *of Bakersfield*, No. 1:18-cv-01512 JLT CDB, 2023 WL 7092293, at *3 (E.D. Cal. Oct. 26, 2023)

8  (quoting Fed. R. Civ. P. 50(a)(1)).  "When, as here, a jury does not reach a verdict, a party may renew

9  the motion post-trial within 28 days of the jury being discharged." *Id.* at *4 (citing Fed. R. Civ. P

10  50(b)).  "Rule 50(b) permits a renewed motion even if the Court declares a mistrial."  *Id.* (citing *Shum*

11  *v. Intel Corp.*, 633 F.3d 1067, 1076 (Fed. Cir. 2010)) ("[A] jury's inability to reach a verdict does not

12  necessarily preclude judgment as a matter of law.").  Accord *Headwaters Forest Defense v. Cnty. of*

13  *Humboldt*, 240 F.3d 1185, 1197 (9th Cir. 2000), vacated on other grounds, 534 U.S. 801 (2001).[1]

14        In its consideration of a posttrial motion for judgment as a matter of law, the court "should

15  review all of the evidence in the record." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,

16  150 (2000). The court "must view the evidence in the light most favorable to the nonmoving party ...

17  and draw all reasonable inferences in that party's favor." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062

18  (9th Cir. 2006). "The district court may not weigh evidence or make credibility determinations when

19  reviewing a motion for judgment as a matter of law." *Dees v. Cnty. of San Diego*, 960 F.3d 1145,

20  1151 (9th Cir. 2020) (citing *Krechman v. Cnty. of Riverside*, 723 F.3d 1104, 1109 (9th Cir. 2013)).

21  "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion

22  is contrary to the jury's verdict." *Josephs*, 443 F.3d at 1062.

23  ///

24  ///

25

26  _____

27  [1] A proper post-verdict motion pursuant to Rule 50(b) is limited to the grounds the moving party asserted in its pre-verdict Rule 50(a) motion.  *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).  Here, Defendants only raise arguments in their motion pursuant to Rule 50(b) that they previously raised in their pre-verdict motion pursuant to Rule 50(a) (*see* Doc. 118);

28  Plaintiff does not argue otherwise.  *See generally* (Doc. 139).

**Summary of Trial Evidence**

According to evidence introduced during trial, on December 30, 2021, at approximately 3:00pm, Plaintiff was involved in a vehicle pursuit with officers of the Bakersfield Police Department ("BPD"), including Defendants Kidwell, Duong and Salazar.  At one point during the pursuit, Plaintiff reversed his vehicle in an apparent attempt to elude officers and struck Defendant Duong's stationary patrol vehicle.  A short time later after the pursuit recommenced, Plaintiff stopped his vehicle, exited, and began to run near the intersection of Wible Road and White Lane in Bakersfield.  Defendant Kidwell continued his pursuit of Plaintiff in his patrol vehicle.  Plaintiff eventually reached a concrete wall that he attempted to hurdle and Kidwell struck Plaintiff with his patrol vehicle.  An eyewitness testified that Plaintiff subsequently threw himself over the wall and Kidwell pursued on foot, ultimately gaining control of Plaintiff near where Plaintiff landed.  Duong and Salazar joined Kidwell and employed force to gain control over Plaintiff.  Plaintiff testified that he was struck with the officers' fists, knees and elbows.  Kidwell called for medical care and the Defendants transported Plaintiff to a nearby patrol vehicle pending arrival of the ambulance.

Plaintiff's police practices expert, Mr. Kelly Couch, testified that Kidwell's use of a patrol vehicle to purposefully strike Plaintiff constituted deadly force because, under the circumstances, the collision reasonably could have caused grave bodily injury.  Couch also testified that, pursuant to standard police practices and training, Kidwell should not have used his patrol vehicle as a control weapon and Defendants should not have moved Plaintiff to a patrol vehicle while awaiting arrival of an ambulance given the severity of Plaintiff's injuries.

**Discussion**

**A.  Unreasonable Denial or Delay of Medical Care – 42 U.S.C. § 1983**

**Legal Standard**

In *Tatum v. City & Cnty. of San Francisco*, the Court of Appeals reiterated that suspects have a Fourth Amendment right to "objectively reasonable post-arrest [medical] care" until the end of the seizure. 441 F.3d 1090, 1099 (9th Cir. 2006).  "This means that officers must 'seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital.'"  *Est.*

1    *of Cornejo ex rel. Solis v. City of Los Angeles*, 618 Fed. Appx. 917, 920 (9th Cir. 2015) (citing *Tatum*,

2    441 F.3d at 1099) (quoting *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986)).

3                                **Discussion**

4                *Plaintiff's Claim Lacks A Legally Sufficient Evidentiary Basis*

5            Although Plaintiff concedes that an arresting officer may satisfy the *Tatum* standard of acting

6    reasonably by promptly summonsing necessary medical assistance, he contends "this is not the end of

7    the inquiry." (Doc. 139 at 3-4). Instead, Plaintiff argues that in addition to promptly summonsing

8    medical care, officers separately must take reasonable steps to "ensure that [medical care] is in fact

9    provided to the patient." *Id.* at 4 (citing *Maddox*, 792 F.2d at 1415 & *City of Revere v. Mass. Gen.*

10   *Hosp.*, 463 U.S. 239, 244 (1983)). Plaintiff argues Defendant Kidwell failed to satisfy this standard

11   because, after summonsing medical care, Kidwell continued to apply force to Plaintiff through striking

12   him and pulling his legs into a figure four leg lock. *Id.* at 5. Plaintiff further argues that, contrary to

13   the best practices testimony offered by Plaintiff's expert witness (Kelly Couch), instead of leaving

14   Plaintiff in place and monitoring him until medical care arrived, Kidwell handcuffed Plaintiff and

15   forcibly moved and secured him in a nearby patrol vehicle. *Id.* Separately, Plaintiff argues that, by

16   securing him in a patrol vehicle, Kidwell delayed arriving medical staff's ability to render care. *Id.* at

17   5-6. Plaintiff contends that although the delay in medical staff's attendance to his injuries was "brief,"

18   the delay nevertheless was unreasonable in light of the severity of his obvious injuries. *Id* at 6.

19           Taken in the light most favorable to Plaintiff, the evidence unquestionably establishes that

20   Kidwell promptly summonsed medical care within minutes after his patrol vehicle collided with

21   Plaintiff. *See* (DX 803-3; DX 810-1). None of Kidwell's conduct cited by Plaintiff contradicts that

22   Kidwell promptly summonsed medical care following Plaintiff's sustainment of injuries. Although

23   Plaintiff argues that Kidwell was obligated under the Fourth Amendment to do something more than

24   just promptly summonsing medical care, none of the authorities he cites either say as much or are

25   controlling (*see* Doc. 139 at 3). Instead, an officer meets the Fourth Amendment standard to

26   reasonably provide for a suspect's medical care so long as he promptly summons or transports the

27   suspect to a care provider. *See Tatum*, 441 F.3d at 1099. *See also Krause v. Cnty. of Mohave*, 846

28   Fed. Appx. 569, 571 (9th Cir. 2021) ("The district court correctly granted summary judgment on

                                        4

1   Plaintiff's denial of medical care claim because the officers fulfilled their due process obligation by

2   calling for medical assistance within one minute of Krause being shot.").  Further, Plaintiff's argument

3   that Kidwell's securing of Plaintiff in a patrol vehicle pending the arrival of an ambulance somehow

4   delayed arriving medical staff from rendering care (Doc. 139 at 5-6) is merely argument unsupported

5   by any trial evidence.

6                     *Defendants are Entitled to Qualified Immunity on Plaintiff's Claim*

7          Even if a jury could and did find Kidwell's actions were not objectively reasonable under the

8   Fourth Amendment, Defendants would be shielded from liability on Plaintiff's claim for denial/delay

9   of medical care under the doctrine of qualified immunity.

10          Qualified immunity protects government officials from liability for § 1983 claims unless they

11   violated a federal right and "the unlawfulness of their conduct was clearly established at the time."

12   *Waid v. Cnty. of Lyon*, 87 F.4th 383, 387 (9th Cir. 2023) (quotation omitted).  "To be clearly

13   established, a legal principle must have a sufficiently clear foundation in then-existing precedent,"

14   meaning "it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive

15   authority.'" *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citing *Ashcroft v. al-Kidd*, 563 U.S.

16   731, 741-42 (2011)).  Stated differently, "[a] right is clearly established when it is 'sufficiently clear

17   that every reasonable official would have understood that what he is doing violates that right.'"

18   *Rosenbaum v. City of San Jose*, 107 F.4th 919, 924 (9th Cir. 2024) (*quoting Rivas-Villegas v.*

19   *Cortesluna*, 595 U.S. 1, 5 (2021)) (citation omitted).  A § 1983 plaintiff bears the burden of proof that

20   the right allegedly violated was clearly established at the time of the alleged misconduct.  *Hopson v.*

21   *Alexander*, 71 F.4th 692, 708 (2023) ("There is no analogous burden on § 1983 defendants to find

22   factually on-point cases clearly establishing the lawfulness of an officer's actions. Nor must § 1983

23   defendants come forward with precedent showing that the unlawfulness of their conduct was not

24   clearly established."); *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991).

25          As applied here, to defeat Defendants' claim to qualified immunity, Plaintiff must identify

26   controlling authority establishing that the alleged misconduct during and after Kidwell's summonsing

27   of an ambulance clearly violated his constitutional right to be free from unreasonably denied or

28   delayed medical care such that any reasonable officer would have perceived the unlawfulness.

Plaintiff fails to meet this burden because he has not identified any controlling and applicable authority for any such proposition. *See* (Doc. 139 at 6-7). Specifically, the only controlling authority cited by Plaintiff is *Tatum*, but that case plainly does not present analogous facts and Plaintiff presents no argument for how that decision would put Defendants on fair notice that their actions of summonsing medical care and securing Plaintiff in a patrol vehicle until an ambulance arrived was unlawful. The unpublished Court of Appeals opinion in *Cornejo* and the unpublished district court decision in *D'Braunstein* – the other cases cited by Plaintiff – are not the type of binding authority a court may consider in determining whether a right is "clearly established" such that qualified immunity does not apply. *Cf. Perkins v. Edgar*, No. 21-55552, 2022 WL 14476272, at *2 (9th Cir. Oct. 25, 2022) (officers entitled to qualified immunity on plaintiff's Fourteenth Amendment denial of medical care claim because the unlawfulness of their alleged failure to direct on-scene paramedics to attend to plaintiff was not "clearly established" under controlling precedent).

Thus, because Plaintiff has not carried his burden of identifying existing precedent that "'squarely governs' the specific facts at issue," Defendants are entitled to qualified immunity. *See Rosenbaum*, 107 F.4th at 924 (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)) (citation omitted)

**B. Negligent Delay or Interference with Access to Medical Care**

**Legal Standard**

In order to establish a claim for negligence, "a plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629 (2013) (internal alteration and citation omitted). Under California law, negligence standards are broader than standards imposed under the Fourth Amendment for § 1983 liability. *See Mulligan v. Nichols*, 835 F.3d 983, 991 (9th Cir. 2016); *Stoddard-Nunez v. City of Hayward*, 817 Fed. Appx. 375, 379 (9th Cir. 2020); *Galindo v. City of San Francisco*, 718 F. Supp.3d 1121, 1145 (N.D. Cal. 2024).

**Discussion**

It does not follow from the Court's holding that no reasonable jury could find for Plaintiff on his claims under the Fourth Amendment for unreasonably denied/delayed medical care that his related state law negligence claim likewise fails. That is because the standard for Plaintiff's negligence claim

6

is less exacting than that under Section 1983.  Here, a jury could find that Defendants complied with their legal obligations under the constitution to reasonably provide for medical care, but that their actions nevertheless fell below the standard of care required of a reasonable police officer under the circumstances.  For example, a jury could find Defendant Kidwell's immediate foot pursuit of Plaintiff after the vehicle collision without appreciating the need to first call for medical assistance fell below the applicable standard of care to reasonably provide for access to medical care.  A jury also could credit Mr. Couch's testimony that Defendants had a duty of care to leave a person in Plaintiff's injured condition on the ground without transporting him to a patrol vehicle.

In sum, a reasonable jury would have a legally sufficient evidentiary basis to find for Plaintiff and against Defendants on this claim.

### C.  Conspiracy to Violate Civil Rights – 42 U.S.C. § 1983

#### Legal Standard

A conspiracy claim brought under § 1983 requires proof of "an agreement or 'meeting of the minds' to violate constitutional rights," *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002), quoting *United Steel Workers of Amer. v. Phelps Dodge Corp*., 865 F.2d 1539, 1540–41 (9th Cir.), *cert. denied*, 493 U.S. 809 (1989) (citation omitted), as well as an "actual deprivation of constitutional rights resulting from the alleged conspiracy."  *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006), quoting *Woodrum v. Woodward Cnty., Okla*., 866 F.2d 1121, 1126 (9th Cir. 1989). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."  *Franklin*, 312 F.3d at 441 (quoting *United Steel Workers*, 865 F.2d at 1541).

The conspiratorial agreement or meeting of the minds may be inferred on the basis of circumstantial evidence, such as the actions of the defendants.  *Mendocino Envtl. Ctr. v. Mendocino Cnty*., 192 F.3d 1283, 1301 (9th Cir. 1999). A showing that defendants committed acts that "are unlikely to have been undertaken without an agreement" may support the inference of conspiracy.  *Id.* In addition, a conspiracy to violate constitutional rights must be predicated on a viable underlying constitutional claim.  *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005). "However, the evidence adduced must demonstrate more than the mere fact that two people did or said

7

the same thing; the evidence must actually point to an agreement." *Myers v. City of Hermosa Beach*, 299 Fed. Appx. 744, 747 (9th Cir. 2008) (citing *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998) & *Ting v. United States*, 927 F.2d 1504, 1512-13 (9th Cir. 1991)). In short, "[t]he defendants must have, by some concerted action, intended to accomplish some unlawful objective for the purpose of harming another which results in damage." *Mendocino Envtl. Ctr.*, 192 F.3d at 1301.

### Discussion

Although Plaintiff's conspiracy to violate civil rights claim as pleaded is premised on Defendants' violation of his rights to be free from both excessive force and unreasonably denied or delayed medical care (*see* Doc. 50, First Amended Complaint, ¶ 55), because the Court has found there is insufficient evidence to proceed on Plaintiff's medical care claim, the conspiracy claim can proceed only on an excessive force theory. *See Hart*, 450 F.3d at 1071 (conspiracy requires "actual deprivation of constitutional rights resulting from the alleged conspiracy").

Plaintiff argues that a jury reasonably could find that Defendants entered into a conspiratorial agreement to violate his constitutional rights based on the following evidence:

- Defendants observed Plaintiff was clearly injured and in need of immediate medical care

- Defendants had no medical purpose to move Plaintiff following the collision and to secure him in a patrol vehicle

- Plaintiff's expert testified that Defendants moved Plaintiff to a patrol vehicle because it was not a good look for officers to be standing over an injured suspect

- Defendant Duong's testimony that he did not see Defendant Kidwell's patrol vehicle collide with Plaintiff nor hear the patrol vehicle's engine rev during Kidwell's acceleration is not consistent with Kidwell's testimony that he did, in fact, fully depress his accelerator prior to colliding with Plaintiff

(Doc. 139 at 10-11). Thus, according to Plaintiff's argument, any conspiracy among Defendants to violate Plaintiff's civil rights was formed *after* Plaintiff already was injured. The Court agrees that no evidence was introduced at trial that there was any preexisting agreement among Defendants at the moment Defendant Kidwell collided with Plaintiff to violate his constitutional right to be free from excessive force – thus, for instance, there was no trial evidence of radio traffic evincing coordination among the Defendants in that regard prior to Kidwell's striking Plaintiff with his vehicle.

Even accepting the evidence identified by Plaintiff in the light most favorable to him, it is insufficient to establish that a reasonable jury could find Defendants did or even could have had a "meeting of the minds" to violate Plaintiff's rights to be free from excessive force. While under certain circumstances an agreement can be found from the very fact and nature of the coconspirators actions, no such facts or circumstances suggesting a meeting of the minds exist here.  That Defendants were aware of Plaintiff's injuries and nevertheless moved him to be secured in a patrol vehicle – even assuming as Plaintiff argues such was done for an improper purpose (*e.g,* to conceal Plaintiff's injuries from any bystanders) – does not even inferentially provide a basis for a jury to find the Defendants agreed among themselves to engage in excessive force upon Plaintiff.

**Conclusion and Order**

For the foregoing reasons, it is HEREBY ORDERED that Defendants' renewed motion pursuant to Rule 50(b) (Doc. 135) is GRANTED IN PART and DENIED IN PART, as follows:

(1)     Defendants' motion is GRANTED on Plaintiff's claims pursuant to 42 U.S.C. § 1983 for Violation of the Fourth Amendment – Failure to Provide Medical Care and for Conspiracy to Violate Civil Rights, and judgement shall enter on these claims in favor of Defendants; and

(2)     Defendants' motion is DENIED on Plaintiff's state law claim for Negligence – Delaying or Interfering with Plaintiff's Access to Medical Care.

And it is FURTHER ORDERED that within 21 days of entry of this order, the parties shall file a joint report setting forth their intentions for continued prosecution of this action, including proposed dates of mutual availability to appear for pretrial conference and retrial.

IT IS SO ORDERED.

Dated:   **January 13, 2025**

_____
UNITED STATES MAGISTRATE JUDGE

9